UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROGER CARL MOLINE,

                    Petitioner,

v.                                        Case No. 3:09-cv-687-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

### ORDER

### I. Status

Petitioner Moline initiated this action by filing a pro se
Petition for Writ of Habeas Corpus (Petition) (Doc. #1) and
Memorandum of Law in Support of the Petition (Memorandum) (Doc. #2)
under 28 U.S.C. § 2254 on July 20, 2009, pursuant to the mailbox
rule.  He challenges a 1996 state court (Clay County, Florida)
judgment of conviction for impersonating a law enforcement officer
and two counts of grand theft.  Respondents have submitted a
memorandum in opposition to the Petition. See Respondents' Response
to Habeas Petition (Response) (Doc. #16); Exhibits (Resp. Ex.)
(Doc. #18).  On October 5, 2009, the Court entered an Order to Show
Cause and Notice to Petitioner (Doc. #8), admonishing Petitioner

regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner submitted a brief in reply on October 27, 2011.  <u>See</u> Petitioner's Amended Reply to Respondents' Response to Habeas Corpus (Reply) (Doc. #21).  This case is ripe for review.

## II. Procedural History

On October 20, 1995, the State of Florida charged Moline with impersonating a law enforcement officer during the commission of a felony and two counts of grand theft. Resp. Ex. B at 6-7, Information; 46-47, Amended Information.  After jury selection, Moline proceeded to a jury trial.  Resp. Ex. C, Transcript of the Jury Trial (Tr.).  At the conclusion of the trial, a jury found Moline guilty of the charges.  Resp. Ex. B at 75-77, Verdicts; Tr. at 171-72.  On April 11, 1996, the trial court sentenced Moline, as a habitual felony offender, to life imprisonment for impersonating a law enforcement officer, ten years of imprisonment for count two, and ten years of imprisonment for count three, with counts two and three to run concurrently to count one.  Resp. Ex. B at 111-18, Judgment; Resp. Ex. D at 41-63, Transcript of Sentencing Proceeding (Sentencing Tr.).

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that the trial court erred in admitting evidence of collateral crimes, which the State was unable to prove by clear and convincing evidence (ground one); the trial court erred in denying

Petitioner's pretrial motion in limine (ground two); the trial court erred in admitting State's exhibit 5 (a copy of Petitioner's driver's license) into evidence (ground three); and the cumulative effect of the trial court's errors deprived Petitioner of a fair trial (ground four). Resp. Ex. E.  The State filed an Answer Brief, and Petitioner filed a Reply Brief.  Resp. Exs. F; G.  On April 23, 1998, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion.  <u>Moline v. State</u>, 718 So.2d 177 (Fla. 1st DCA 1998); Resp. Ex. H.  The court denied Petitioner's motion for rehearing on June 5, 1998.  Resp. Ex. I.  The mandate issued on June 23, 1998.[1]  Petitioner did not seek review in the United States Supreme Court.

On June 23, 2000, Petitioner filed a <u>pro se</u> petition for writ of habeas corpus, arguing that appellate counsel was ineffective because he failed to raise the following issues on direct appeal: the trial court erred in denying Petitioner's motion for discharge when counsel adopted the expiration of speedy trial time limits of Petitioner's <u>pro se</u> motion (ground one); the trial court erred in allowing the State to "doctor up" its incomplete notices of <u>Williams</u> Rule evidence (ground two); the trial court violated Petitioner's constitutional rights when he was denied the right to participate in several conferences, including pretrial meetings

---

[1] Online docket, <u>Roger Moline v. State of Florida</u>, Case No. 1D97-343, website for the First District Court of Appeal (http://www.1dca.org).

between lawyers and the judge, side bars, and chamber conferences during jury selection (ground three); the trial court abused its discretion when it failed to excuse for cause Joanna Weigel and Rena Roberts (ground four); the trial court failed to permit any voir dire examination of prospective jurors by counsel, collectively or individually in exercise of peremptory challenges, thus allowing two biased jurors to be seated on the jury panel (ground five); and the trial court erred in sentencing Petitioner as a habitual offender when the statute under which he was convicted did not provide for habitualization. Resp. Ex. J. The State responded. Resp. Ex. K. On May 11, 2001, the appellate court denied the petition on the merits. Moline v. State, 818 So.2d 504 (Fla. 1st DCA 2001); Resp. Ex. L. The court denied Petitioner's motion for rehearing on June 29, 2001.[2] Resp. Ex. M.

On June 23, 2000, Petitioner filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. N at 1-68. In his request for post conviction relief (Rule 3.850 motion), Petitioner alleged that his counsel was ineffective because he failed to: call potential alibi witnesses (ground one); ensure that the State met its burden in qualifying Petitioner as a habitual felony offender (ground two); call a handwriting expert to declare the signature on the motel registry

---

[2] Online docket, Roger Carl Moline v. State of Florida, Case No. 1D00-2454.

4

a forgery (ground three); challenge jurors Joanne Weigel and Rona Roberts (ground four); move to suppress or object to the victim's in-court identification as impermissibly suggestive (ground six); introduce exculpatory evidence, such as the victim's canceled checks, the bank's video, and the fingerprint results (ground seven); object to the trial court's closure of the courtroom to the public throughout the trial (ground eight); move to suppress when the State delivered the second supplemental response to the demand for discovery, request a Richardson[3] inquiry, and challenge the custodian of the motel records and the Florida Department of Law Enforcement analyst's testimony (ground nine); object to or move to dismiss the defective charging information (ground ten); and object to or move to suppress the State's introduction of exhibits A and G (ground eleven). Id. Additionally, Petitioner asserted that the trial court erred when the court: excluded Petitioner from several pretrial conferences (ground five); denied Petitioner's motion for discharge of speedy trial rights (ground twelve); and refused to excuse for cause the biased jurors (ground thirteen).  Id.

In amending the motion on July 25, 2000, Petitioner added three claims, asserting that counsel was ineffective because he failed to: move to suppress or object to the State's introduction of collateral crimes evidence (Amended Rule 3.850 motion, ground thirteen); call Deputy Michael Seymour as a witness (Amended Rule

---

[3] Richardson v. State, 246 So.2d 771 (Fla. 1971).

3.850 motion, ground fourteen); and move for a mistrial or object to the prosecutor's prejudicial statements during opening and closing arguments (Amended Rule 3.850 motion, ground fifteen). Id. at 78-79.  The State responded, see id. at 182-84, and Petitioner replied, see id. at 189-93.  The court held an evidentiary hearing on November 13, 2002.  Id. at 509-88, Transcript of the Evidentiary Hearing (EH Tr.).  On March 18, 2003, in partially granting the motions, the trial court vacated Petitioner's habitual felony offender classification and sentence, as to count one, and stated that Petitioner would be resentenced; the remaining portions of the motion were denied.  Id. at 482-98.

On April 16, 2003, the court resentenced Moline, on count one, to thirty years of imprisonment.  Resp. Ex. N at 894-913, Transcript of the Resentencing Proceeding (Resentencing Tr.).  To justify the upward departure from the sentencing guidelines, the court found: the victim was especially vulnerable due to his advanced age and that Petitioner is not amenable to rehabilitation or supervision, as evidenced by his criminal record spanning over forty years and the escalating pattern of criminal conduct.  Id. at 797-99, Judgment and Sentence as to Count One.

Petitioner appealed the denial of his Rule 3.850 motions and filed a brief.  Resp. Ex. O.  The State filed a notice that it did not intend to file an answer brief.  Resp. Ex. P.  On May 28, 2004, the appellate court affirmed the trial court's decision per curiam.

Moline v. State, 876 So.2d 564 (Fla. 1st DCA 2004); Resp. Ex. Q.
The court denied Petitioner's motion for rehearing on July 9, 2004,
see Resp. Exs. R; S, and the mandate issued on July 27, 2004, see
Resp. Ex. T.

On January 24, 2005, Petitioner filed a pro se Rule 3.800
motion, challenging the legality of the sentence and asserting that
the April 16, 2003 departure sentence exceeded the limits provided
by law because the reasons for the court's upward departure were
not presented to a jury and proven beyond a reasonable doubt.
Resp. Ex. U at 1-6.  In denying the motion on February 8, 2005, the
trial court concluded: "The justification of the Court's departure
from the sentencing guidelines is fair and appropriate . . . ."
Id. at 7-30.   The trial court denied Petitioner's motion for
rehearing on May 6, 2005.  Id. at 31-39, 40.

On Petitioner's appeal, the appellate court, on March 3, 2006,
reversed the trial court's summary denial of Moline's motion and
remanded the case to the trial court to conduct an evidentiary
hearing or to refute Moline's claim with record attachments.
Moline v. State, 983 So.2d 1 (Fla. 1st DCA 2006) (per curiam);
Resp. Ex. Y.  When the State filed for discretionary review, see
Resp. Ex. Z, the Florida Supreme Court, on April 6, 2006, stayed
Petitioner's case pending the final disposition of Galindez v.
State, 910 So.2d 284 (Fla. 3rd DCA 2005).   Resp. Ex. AA.

7

Ultimately, the Florida Supreme Court decided Galindez on harmless error grounds. See Galindez v. State, 955 So.2d 517 (Fla. 2007).

On February 21, 2008, the Florida Supreme Court quashed the appellate court's March 3, 2006 decision in Petitioner's case and remanded the case to the appellate court for application of a harmless error analysis based upon Galindez. Moline v. State, 976 So.2d 576 (Fla. 2008); Resp. Ex. BB. Finding the record to be insufficient for a determination whether the Apprendi[4] error was harmless, the appellate court, on May 27, 2008, reversed the trial court's denial of Petitioner's motion and remanded the case to the trial court to reexamine Petitioner's claim in light of Galindez. Moline v. State, 982 So.2d 1223, 1224 (Fla. 1st DCA 2008) (per curiam); Resp. Ex. CC.

On September 12, 2008, in denying Petitioner's January 24, 2005 post-conviction motion, the trial court concluded that the record supports that "a rational jury would have found the aggravating circumstances that the sentencing court relied on when it imposed the departure sentence and that any error in failing to apply Apprendi was harmless." Resp. Ex. DD at 196. On May 4, 2009, the appellate court affirmed the trial court's denial per curiam. Moline v. State, 11 So.3d 359 (Fla. 1st DCA 2009); Resp. Ex. GG. The appellate court denied Petitioner's motion for

---

[4] Apprendi v. New Jersey, 530 U.S. 466 (2000).

rehearing on June 24, 2009, see Resp. Exs. HH; II, and the mandate issued on July 10, 2009, see Resp. Ex. JJ.

During the pendency of the post conviction motion challenging his sentence, Petitioner, on July 14, 2005, filed a second pro se petition for writ of habeas corpus, asserting that appellate counsel was ineffective because he failed to: file a post conviction motion, arguing that the sentencing court erred by imposing a sentence, which exceeded the limits of the sentencing guidelines, using facts not submitted to a jury (ground one), and raise the issue relating to Petitioner's speedy trial rights (ground two). Resp. Ex. KK.   The appellate court denied the petition on September 9, 2005.  Moline v. State, 910 So.2d 899 (Fla. 1st DCA 2005); Resp. Ex. LL.

Petitioner also filed three pro se motions to correct an illegal sentence, filed on December 16, 2005 (Resp. Ex. DD at 92-98), September 18, 2006 (id. at 100-07), and December 4, 2009 (Resp. Ex. OO at 1-8).  In the December 2005 motion, Moline raised an Apprendi claim.  Resp. Ex. DD at 94.  In the September 2006 motion, Petitioner claimed that his maximum sentence, as to count one, should be for a second degree felony rather than a first degree felony because, at the time of the 2003 resentencing, the crime had been reclassified as a second degree felony.  Id. at 101-03.  Moreover, in the December 2009 motion, he challenged his sentence based on a flawed Information and lack of evidence.  Resp.

Ex. OO at 1-8.  The trial court denied the motions on March 31, 2010.  Id. at 111-13.  Petitioner appealed and filed a brief.  Resp. Ex. PP.  The State filed its notice that it did not intend to file a response.  Resp. Ex. QQ.  The appellate court affirmed the trial court's denial per curiam on August 5, 2010, see Moline v. State, 41 So.3d 896 (Fla. 1st DCA 2010); Resp. Ex. RR, and the mandate issued on August 31, 2010, see Resp. Ex. SS.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 4-6.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert.

<u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> > A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context.  An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable.  Questions of law and mixed questions of law and fact are reviewed <u>de novo</u>, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

11

> _Jennings v. McDonough_, 490 F.3d 1230, 1236
> (11th Cir. 2007) (quotation marks and
> citations omitted).  In sum, "a federal habeas
> court making the 'unreasonable application'
> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable." _Williams_, 529
> U.S. at 409, 120 S.Ct. at 1521.  Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[5]
> 28 U.S.C. § 2254(e)(1).

_Ward v. Hall_, 592 F.3d 1144, 1155-56 (11th Cir. 2010), _cert_.

_denied_, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling.  _Harrington v. Richter_, 131 S.Ct. 770,

785 (2011) (holding that section 2254(d) does not require a state

court to give reasons before its decision can be deemed to have

been adjudicated on the merits); _Wright v. Sec'y for the Dep't of

Corr._, 278 F.3d 1245, 1255 (11th Cir. 2002), _cert_. _denied_, 538 U.S.

906 (2003).  Thus, to the extent that Petitioner's claims were

---

[5] "This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." _Bui v.
Haley_, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing _Sumner v. Mata_, 449 U.S. 539, 547 (1981)).

adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that the trial court sentenced him in violation of Apprendi and the Sixth Amendment.  He asserts that the April 16, 2003 thirty-year sentence, an upward departure from the sentencing guidelines, was based on facts found by the sentencing judge, not the jury.  After extensive post-conviction review in the state courts of Petitioner's assertion that the thirty-year sentence violated Apprendi and the Sixth Amendment right, the trial court ultimately denied Petitioner's post-conviction motion.  In that denial, the court concluded that "the record supports that a rational jury would have found the aggravating circumstances that the sentencing court relied on when it imposed the departure sentence and that any error in failing to apply Apprendi was harmless."  Resp. Ex. DD at 196. (citation omitted).  The post-conviction court found:

> The victim testified that he was 80 years old,
> thus making him 78 years old at the time
> [when] the Defendant committed the crime.
> (Exhibits "I", pages 19-20.)  The victim also
> testified as to how the Defendant was able to
> "dupe" the victim out of thousands of dollars.
> (Exhibit "I," pages 20-37.)  Thus, the jury
> had the opportunity to view the 80 year old
> victim on the stand, and listen to the
> victim's testimony as to how easily the victim
> fell prey to the Defendant's scheme that
> targeted the elderly.  (Id.)  The record

13

demonstrates beyond a reasonable doubt that a rational jury would have found the . . . aggravating circumstance.

. . . .

There was ample evidence in the record that the Defendant had an escalating pattern of criminal conduct, including that the Defendant had been:

> arrested approximately 25 times and charged with approximately 36 separate offenses.  He had, during his life, received one jail sentence, six prison sentences, and is currently on active parole.  He has been convicted of larceny, grand theft, obtaining money under false pretenses and similar crimes at least nine times.  He also has been convicted of escape.

(Exhibit "H," 16-18.) See Isaac v. State, No. 1D07-6179, 2008 WL 4066440 (Fla. 1st DCA, Sep. 4, 2008). At trial, another of the Defendant's victims, also an elderly man, testified that he had also fallen victim to the Defendant's scheme. (Exhibit "I," pages 126-134.)  Thus, the record demonstrates beyond a reasonable doubt that a rational jury would have found [this] aggravating circumstance.

Finally, this Court finds that when multiple reasons exist to support a departure from a guideline sentence, the departure shall be upheld when at least one circumstance or factor justifies the departure regardless of the presence of other circumstances or factors found not to justify a departure. § 921.001(6), Fla. Stat. (1996).  Accordingly, this Court finds that assuming Apprendi applies to the Defendant's 2003 resentencing, the record demonstrates beyond a reasonable doubt that a rational jury would have found all . . . of the aggravating circumstances that were used to support the Defendant's departure sentence.

14

Id. at 197-98.  Upon Petitioner's appeal, the appellate court affirmed the trial court's denial per curiam.  Moline, 11 So.3d 359.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.[6]  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the post-conviction motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim still fails.  The record sufficiently supports the trial court's findings.  The following

---

[6] Washington v. Recuenco, 548 U.S. 212 (2006) (holding that Apprendi/Blakely error is subject to harmless-error analysis).

15

facts are relevant for resolution of Petitioner's <u>Apprendi</u> claim. In 1996, the trial court sentenced Petitioner, as a habitual felony offender, to life imprisonment on count one (impersonating a law enforcement officer during the commission of a felony). Resp. Ex. B at 111-18, Judgment; <u>see</u> Sentencing Tr. On post-conviction review in 2003, the trial court vacated Petitioner's habitual felony offender sentence, as to count one, stating:

> The Defendant's first sub-claim is that Florida Statute § 843.08 does not authorize habitual felony offender classification. The Defendant's claim is meritorious. The Defendant was charged pursuant to section 843.08, Florida Statutes (1995) with falsely personating a police officer during the course of the commission of a felony. (Exhibit "D.") Section 843.08, Florida Statutes (1995), provided for sentencing pursuant to sections 775.082 and 775.083, Florida Statutes (1995). The statute did not provide for sentencing as an H.F.O. pursuant to section 775.084, Florida Statu[t]es (1995). § 843.08, Fla. Stat. (1995). **Therefore, the Defendant's classification as an H.F.O. as to count one is improper and the Defendant must be resentenced.** The Defendant's H.F.O. classification as to counts two and three is proper.

Resp. Ex. N at 489 (emphasis added).

At the April 16, 2003 resentencing proceeding, the trial judge stated: "we're basing this sentencing on guidelines which existed at the time of sentencing, . . . but I need to hear from the State if there are any aggravating factors or reasons to depart from [the] sentence?" Resentencing Tr. at 897. Arguing for an upward departure from the sentencing guidelines, the State asserted the

16

following aggravating factors: (1) the victim was especially vulnerable due to his advanced age (age 78 at the time of the crime);[7] (2) the offense, resulting in a substantial economic hardship to the victim and consisting of an illegal act committed by means of concealment, guile, or fraud to obtain money, involved a high degree of sophistication and planning on the part of Moline, who had a prior conviction for impersonating a police officer;[8] and (3) there was evidence, in the presentence investigation report, of Moline's escalating pattern of criminal conduct.[9] Id. at 897-901. Based on those aggravating factors, the State recommended that the court sentence Moline "to the maximum possible in this case, which is a first degree felony, of 30 years." Id. at 901.

Interested in Moline's prior conviction based on similar conduct, the trial judge inquired as to when Moline was previously convicted of impersonating a police officer. Id. The State

---

[7] See Fla. Stat. § 921.0016(3)(j) (1995) (stating that "[t]he victim was especially vulnerable due to age or physical or mental disability").

[8] See Fla. Stat. § 921.0016(3)(n), 2. and 4. (1995) ("The offense resulted in substantial economic hardship to a victim and consisted of an illegal act or acts committed by means of concealment, guile, or fraud to obtain money or property" with the following circumstances present: "[t]he offense involved a high degree of sophistication or planning" and "[t]he defendant was in the past involved in other conduct similar to that involved in the current offense.").

[9] See Fla. Stat. § 921.0016(3)(p) ("The defendant is not amenable to rehabilitation or supervision, as evidenced by an escalating pattern of criminal conduct as described in s. 921.001(8).").

17

responded: "Hillsborough County, Florida, falsely impersonating an officer and grand theft of the third degree, and it is dated September 8th, 1995." Id. at 902.  Although defense counsel argued that Moline should be sentenced within the guidelines range, as reflected in the sentencing guidelines scoresheet[10] (16.5 to 27.5 months), see id. at 902-05, the court sentenced Moline, on count one, to thirty years of imprisonment. In explaining the basis for the upward departure from the guidelines, the court stated:

> This Court finds that there -- that through clear and convincing presentation in the record, as well as some of what the argument with counsel, certain aggravating factors exists [sic] in this case.  And the Court finds that the justification for the departure from the sentencing guidelines are as follows.
>
> One is that the victim was especially vulnerable due to age.  My review of the guidelines states that under (3)(j), that the victim was especially vulnerable due to age or physical or mental disability.  This victim was 78 years old.  He was in the hospital in less than a year -- or two years of the crime -- at the time of this offense, which would have made him 80 years old, and, of course, has been deceased prior to today -- today's hearing.
>
> The Court finds further under subsection 4.(p) of the aggravating factors, that the defendant is not amenable to rehabilitation or supervision, as evidenced by the escalating pattern of criminal conduct as described in section 921.001(8) of the Florida Statutes, which I just summarized to the court [sic]; that is, his prior felony convictions, use of

---

[10] See Resp. Ex. B at 119-21, Sentencing Guidelines Scoresheet.

deceit, and the like. Also, the fact that the defendant's criminal record spans over 40 years.

As an additional aggravating circumstance, the Court finds that the very fact that he was on Federal parole at the time of the commission of these offenses is additionally egregious behavior, such that, once again, makes me find that supervision is not going to be helpful for this defendant.

Id. at 910-11.  That same day, in a written Judgment, the trial

judge concluded:

The justification of the Court's departure from the sentencing guidelines is as follows:

1.  **The victim was especially vulnerable due to age**. He was 78 years old at the time of the commission of the crime, was elderly, the defendant took the monies that the victim had in a certificate of deposit and a bank account. The victim had questionable health in light of the fact that he was in the hospital at the time the pre-sentence investigation was prepared.  He has since passed away.

2.  The criminal conduct of the defendant appears to be escalating and included various crimes of deceit.  **The defendant is not amenable to rehabilitation or supervision as evidenced by his criminal conduct.** In fact, the defendant committed this crime while on Federal felony parole.  Additionally, the defendant had eight (8) prior felony convictions for theft offenses. It is also noted that the defendant's criminal career spans over fourty [sic] years.

Resp. Ex. N at 797-98, Judgment and Sentence as to Count 1 and Reason for Departure from Sentence Guidelines, dated April 16, 2003 (emphasis added).

On June 26, 2000, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. As the Court clarified on June 24, 2004, "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. 296, 303 (2004) (emphasis deleted). Given the state court procedural history in Moline's case, it appears that both Apprendi and Blakely are applicable to Moline's April 16, 2003 resentencing, which became final on July 9, 2004.

Thus, under Apprendi and Blakely, Petitioner was entitled to a jury determination of any fact that increased his sentence beyond the sentencing guidelines maximum, which was 27.5 months according to the sentencing guidelines scoresheet.[11]  See Mitchell v. State, No. 1D07-1715, 2012 WL 955508, *1 (Fla. 1st DCA Mar. 22, 2012) (per curiam) (stating that, where the trial court imposed upward departure sentences of life imprisonment based on its findings (the offenses were committed in an especially heinous, atrocious, or

---

[11]  See Resp. Ex. B at 120, Sentencing Guidelines Scoresheet.

cruel manner, and the victim suffered extraordinary physical or emotional trauma, or permanent physical injury, or was treated with cruelty) when the 1994 scoresheet called for a maximum sentence of 20.9 years' imprisonment, under both Apprendi and Blakely, appellant "is entitled to a jury determination of any fact that increased his sentence beyond the guidelines maximum").

Recognizing recidivism as a traditional basis for a sentencing court's increasing an offender's sentence, the Apprendi Court declined to revisit Almendarez-Torres v. United States, 523 U.S. 224 (1998). Apprendi, 530 U.S. at 488-90. In Almendarez-Torres, the Court established that a defendant's prior conviction is merely "a sentencing factor" that does not have to be submitted to the jury and proved beyond a reasonable doubt. Almendarez-Torres, 523 U.S. at 226-27, 235.

The United States Supreme Court has not overruled Almendarez-Torres, and its holding remains binding precedent in this Circuit. See United States v. O'Brien, 130 S.Ct. 2169, 2174, 2180 (2010) (holding the machine gun provision is an element of the offense, not a sentencing factor, but recognizing the Almendarez-Torres exception); Rita v. United States, 551 U.S. 338, 387 n.1 (2007) ("We recognized a single exception to this rule, permitting reliance on the fact of a prior conviction without a jury determination that the defendant had previously been convicted.") In addressing a Sixth Amendment claim that a prior conviction could

not be relied upon because it was not found by a jury beyond a reasonable doubt, the Eleventh Circuit stated:

> Both Supreme Court and this circuit's precedent foreclose [Petitioner]'s arguments. The Supreme Court has held that neither the Constitution nor any statute is violated when a prior offense, not charged in the indictment, is used to increase a sentence. Almendarez-Torres v. United States, 523 U.S. 224, 226-27, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). We have applied Almendarez-Torres in holding that a district court does not violate the Sixth Amendment when a statutory maximum sentence is increased based upon judicial findings of prior convictions that were never proved to a jury beyond a reasonable doubt or affirmatively admitted by the defendant in his plea hearing. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005). Moreover, we have held that neither Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), nor United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) disturbed the Supreme Court's holding in Almendarez v. Torres. Id. Although various justices of the Supreme Court have questioned the soundness of Almendarez-Torres in subsequent decisions, until it is expressly overruled, we are bound to follow it. See United States v. Greer, 440 F.3d 1267, 1273 (11th Cir. 2006).

United States v. McCain, 358 Fed.Appx. 51, 52 (11th Cir. 2009) (per curiam) (not selected for publication in the Federal Reporter); see United States v. Beasley, 447 Fed.Appx. 32, 37 (11th Cir. 2011) (per curiam) (not selected for publication in the Federal Reporter).

Again, the Eleventh Circuit reiterated its position, rejecting

a Sixth Amendment claim and stating:

> this argument is foreclosed by
> Almendarez-Torres v. United States, 523 U.S.
> 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).
> We repeatedly have explained that, even after
> Apprendi v. New Jersey, 530 U.S. 466, 120
> S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its
> progeny Blakely v. Washington, 542 U.S. 296,
> 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and
> United States v. Booker, 543 U.S. 220, 125
> S.Ct. 738, 160 L.Ed.2d 621 (2005), we are
> bound by Almendarez-Torres until it is
> explicitly overruled by the Supreme Court.
> See, e.g., United States v. Greer, 440 F.3d
> 1267, 1273-74 (11th Cir. 2006); United States
> v. Gibson, 434 F.3d 1234, 1246-47 (11th Cir.
> 2006).
>
> [The Petitioner] argues that
> Almendarez-Torres permits a sentencing court
> to find only the mere fact of a conviction and
> that Apprendi, Booker, and Shepard v. United
> States, 544 U.S. 13, 125 S.Ct. 1254, 161
> L.Ed.2d 205 (2005), bar judge-made findings
> about the factual nature of the prior
> convictions. This Court has already rejected
> this argument. See Greer, 440 F.3d at 1275
> (explaining that Apprendi, Booker and Shepard
> do not "forbid a judge from determining the
> factual nature of a prior conviction," but
> instead "restrict[ ] the sources or evidence
> that a judge (instead of a jury) can consider
> in making that finding" (quotation marks
> omitted)).

United States v. Michel, 430 Fed.Appx. 838, 839 (11th Cir. 2011)

(per curiam) (not selected for publication in the Federal

Reporter), cert. denied, 132 S.Ct. 434 (2011).  Just as the

Eleventh Circuit has acknowledged that it is "bound to follow

Almendarez-Torres unless and until the Supreme Court itself

overrules that decision[,]" <u>United States v. Thomas</u>, 242 F.3d 1028, 1035 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 533 U.S. 960 (2001), this Court is bound to follow <u>Almendarez-Torres</u>.

As previously chronicled, the trial judge, in a written Judgment and Sentence, dated April 16, 2003, set forth the following reason as justification for the upward departure from the sentencing guidelines:

> The criminal conduct of the defendant appears to be escalating and included various crimes of deceit. The defendant is not amenable to rehabilitation or supervision as evidenced by his criminal conduct. In fact, the defendant committed this crime while on Federal felony parole. **Additionally, the defendant had eight (8) prior felony convictions for theft offenses.** It is also noted that the defendant's criminal career spans over fourty [sic] years.

Resp. Ex. N at 798 (emphasis added). Thus, to the extent that the trial court's justification for the upward departure is based on Moline's <u>prior</u> <u>convictions</u> for which there is record evidence,[12] his Sixth Amendment claim relating to this departure reason is foreclosed based on <u>Almendarez-Torres</u>.

As previously quoted, the trial judge also found that, under Florida Statutes section 921.0016(3)(p), Moline "is not amenable to rehabilitation or supervision, as evidenced by the escalating

---

[12] Petitioner's extensive criminal history, including prior felony convictions, is apparent from the face of his Sentencing Guidelines Scoresheet, <u>see</u> Resp. Ex. B at 119-21, and the Presentence Investigation Report, <u>see</u> Resp. Ex. N at 812-19.

pattern of criminal conduct," as described in Florida Statutes section 921.001(8).[13]   Resentencing Tr. at 910-11.  Describing what constitutes an "escalating pattern," the Florida Supreme Court stated:

> We recognize that section 921.001(8), Florida Statutes (1987), authorizes departure from the sentencing guidelines "when credible facts . . . demonstrate that the defendant's prior record . . . and the current criminal offense for which the defendant is being sentenced indicate an escalating pattern of criminal conduct."  Section 921.001(8) also provides that this escalating pattern may be evidenced by a "progression from nonviolent to violent crimes or a progression of increasingly violent crimes." However, this Court has construed this provision as not necessarily requiring a violent progression.  Departure is permissible when "the defendant has shown a pattern of engaging in increasingly serious criminal activity." Williams v. State, 581 So.2d 144, 146 (Fla. 1991). Consequently, the "escalating pattern" recognized by section 921.001(8) as a valid basis for departure can be demonstrated in three ways: 1) a progression from nonviolent to violent crimes; 2) a progression of increasingly violent crimes; or 3) a pattern of increasingly serious criminal activity. **Under this third category, "increasingly serious criminal activity" is indicated when the current charge involves an increase in either the degree of**

---

[13] Florida Statutes section 921.001(8)(1995) states: "A sentence may be imposed outside the guidelines based on credible facts, proven by a preponderance of the evidence, which demonstrate that the defendant's prior record, including offenses for which adjudication was withheld and the current criminal offense for which the defendant is being sentenced, indicate an escalating pattern of criminal conduct.  The escalating pattern of criminal conduct may be evidenced by a progression from nonviolent to violent crimes, a progression of increasingly violent crimes, or a pattern of increasingly serious criminal activity."

> **crime or the sentence which may be imposed, when compared with the defendant's previous offenses.**

Barfield v. State, 594 So.2d 259, 261 (Fla. 1992) (emphasis added).

At the resentencing hearing, the State argued:

> Now, that pattern of conduct may be evidenced by a progression from violent -- or non-violent to violent, which we don't have here, or a progression of increasingly violent crimes, which also we don't have here, or a pattern of increasingly serious criminal activity.
>
> And if you look over the past, his past record, you'll show a long, long series of thefts, petit thefts, and theft by deception, and basically a long, long history of thefts. But, they progress in a more complicated schemes [sic] and more serious consequences to the victim.
>
> In this case, I point the Court's attention to a conviction in 1960; nighttime larceny over $20, basically a petit theft, and he's moved on to using impersonating a police officer in this scheme and stealing $11,000. And the State's position is that shows an escalating pattern.

Resentencing Tr. at 900-01.

In State v. Darrisaw, 660 So.2d 269, 271 (Fla. 1995), the Florida Supreme Court required competent, substantial evidence to establish both a pattern of criminal conduct and the escalation of that conduct to satisfy this particular aggravating factor. The court explained:

> Section 921.001(8) speaks in terms of both an increase in the offenses ("escalating") and some recurring feature of the offenses ("pattern"). If the offenses meet the

26

> definition of "escalating," then the "pattern"
> requirement can be satisfied either where the
> offenses are committed in temporal proximity
> or where there is a similarity of offenses.

Id.

Here, Petitioner's prior criminal record and his current criminal offense show an escalating pattern of criminal conduct. First, there is "escalating" criminal conduct, as evidenced by an increase in the degree of the crime. The current charge at issue (the January 5, 1995 impersonating a police officer during the commission of a felony, to wit: grand theft, see Resp. Ex. B at 46, Amended Information) is a first degree felony as compared to Petitioner's previous criminal offenses for impersonating a police officer (a third degree felony), grand theft (a third degree felony), trafficking in stolen property (a second degree felony), escape (a second degree felony), larceny, theft and obtaining money under false pretenses. See Resp. Ex. B, Sentencing Guidelines Scoresheet, Section IV., Prior Record: Supplemental Page Attached, at 119, 121; Resp. Ex. N, Presentence Investigation, at 812-19; see also http://www.dc.state.fl.us/ActiveInmates (Corrections Offender Network, reflecting Petitioner's Case No. 95-1809, August 23, 1994 commission of grand theft and impersonating a police officer).

Secondly, there was "a pattern" to Petitioner's criminal conduct due to "the recurring feature of the offenses,"[14] which the

---

[14] Darrisaw, 660 So.2d at 271.

trial judge described as the "use of deceit" spanning over forty years.  Resentencing Tr. at 911.  On August 23, 1994, while on federal parole, see id. at 909, Petitioner committed the criminal offense of impersonating a law enforcement officer, a third degree felony (Hillsborough County, Case No. 95-1809).[15]  Less than five months later, on January 5, 1995, Petitioner committed the offense of impersonating a law enforcement officer during the commission of a felony: grand theft (Clay County, Case No. 95-1331).  Thus, based on the similarity of the prior offenses as well as the temporal proximity of the August 23, 1994 crime of impersonating a police officer, there is evidence of an escalating "pattern" of criminal conduct.

Thus, the trial judge concluded that Petitioner was not amenable to rehabilitation or supervision, as evidenced by his criminal record, involving the "use of deceit" spanning over forty years, as well as "the very fact that he was on Federal parole at the time of the commission of these offenses" which reflects "egregious behavior" showing "supervision is not going to be helpful for this defendant."  Resentencing Tr. at 911; see Morrison v. State, 59 So.3d 308, 311 (Fla. 2nd DCA 2011) ("The 1995 and 1997 versions of section 921.0016(3)(p) allow a trial court to impose an

---

[15] At Petitioner's trial, Carl Jackson Brown, the seventy-year old victim of Petitioner's prior offenses of impersonating a police officer and grand theft, testified about the events that had transpired in Hillsborough County on August 23, 1994.  Tr. at 126-34.

upward departure if there is proof that a defendant is not amenable to rehabilitation or supervision as evidenced by an escalating pattern of criminal conduct.").

Moreover, as the State acknowledges, see Response at 17 n.2, and the record reflects, the trial judge set forth another reason as justification for the upward departure from the sentencing guidelines: the victim was especially vulnerable due to age.  Resp. Ex. N at 797.[16]   The parties acknowledge, see Response at 18; Memorandum at 3, and this Court agrees, that an Apprendi error is subject to a harmless error analysis.  See Washington v. Recueno, 548 U.S. 212, 218-20 (2006).  Thus, to the extent that there may have been an Apprendi violation, this Circuit "has recognized repeatedly that where an Apprendi violation exists, . . . a reviewing court must engage in a harmless error analysis." United States v. Allen, 302 F.3d 1260, 1276 (11th Cir. 2002).

On federal habeas review, harmless error is determined by applying the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).  As the Eleventh Circuit recently expressed:  "In short, we observe, consistent with the Supreme Court's decision in Fry [v. Pliler, 551 U.S. 112 (2007)], that a federal habeas court may deny relief based solely on a determination that a federal

---

[16]  At Petitioner's trial, Stanley H. Crosby (the victim) testified as to the events that had transpired on January 5, 1995, when Moline, who had impersonated a law enforcement officer, took his money.  Tr. at 19-36.

constitutional error was harmless under the <u>Brecht</u> standard." <u>Mansfield v. Sec'y, Dep't of Corr</u>., No. 09-12312, 2012 WL 1605655, *7 (11th Cir. May 9, 2012).

Applying <u>Brecht</u>, "a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." <u>Id</u>. at *5 (citing <u>Brecht</u>, 507 U.S. at 637). In assessing the prejudicial impact of the federal constitutional error in a state court criminal sentencing proceeding under the "substantial and injurious effect" standard, there must be "more than a reasonable probability that the error contributed to the sentence." <u>Horsley v. State of Ala.</u>, 45 F.3d 1486, 1493 (11th Cir. 1995), <u>cert</u>. <u>denied</u>, 516 U.S. 960 (1995); <u>Mason v. Allen</u>, 605 F.3d 1114, 1123 (11th Cir. 2010), <u>cert</u>. <u>denied</u>, 131 S.Ct. 2175 (2011).

Under the circumstances presented in this record, this Court concludes that Petitioner has failed to show "more than a reasonable possibility that the error contributed to the sentence." <u>Horsley</u>, 45 F.3d at 1493; Response at 18-20 (stating that Moline has not met his burden of establishing that the error was not harmless in that there is ample evidence that the jury would have found the aggravating circumstances used by the sentencing judge). Given Petitioner's escalating pattern of criminal conduct, as evidenced by the record, it is quite likely that the jury would have found the aggravating factors if it had been asked to render

a verdict on them and that the upward term of thirty years would have been authorized based on those factors.  Thus, even if there was an <u>Apprendi/Blakely</u> error, this Court finds that it was harmless. Therefore, ground one does not warrant habeas relief.

## B. Ground Two

As ground two, Petitioner claims that he was denied due process of law because, during his direct appeal, the Florida Legislature modified the criminal statute (designating the crime of impersonating a law enforcement officer during the commission of a felony as a second degree felony instead of a first degree felony), and the Florida courts have refused to apply this modification to his case.  Petitioner raised this claim in his September 18, 2006 motion to correct illegal sentence.  Resp. Ex. DD at 100-03. In denying the motion, the trial court stated in pertinent part:

> To the extent his claim is cognizable, it appears the Defendant is arguing his maximum sentence as to Count 1 should be for a second degree felony rather than a first degree felony because at the time of his resentencing, the crime had been reclassified as a second degree felony. The law to be applied during sentencing is that which was valid at the time of the crime. The Defendant's September 2006 Motion is denied.

Resp. Ex. OO at 112. Following an appeal by Moline, the appellate court affirmed the denial per curiam.

The appellate court may have affirmed the denial of the post conviction motion on the merits.  If the appellate court addressed the merits, there are qualifying state court decisions.  Assuming

31

so, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Having reviewed the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even absent a decision entitled to deferential review under AEDPA, this Court finds this challenge to be without merit. The trial court's conclusion is fully supported by the record. In 1996, the Florida Legislature modified Florida Statutes section 843.08, by providing that a person who falsely personates officers during the commission of a felony commits a second degree felony, instead of a first degree felony. See Chapter 96-256, § 3, effective October 1, 1996. In the Amended Information, the State charged Petitioner with impersonating a law enforcement officer during the commission of a felony (grand theft), as a first degree felony, committed on January 5, 1995. See Resp. Ex. B at 46-47, Amended Information. Petitioner acknowledges that his crime was committed before the legislative change. Thus, Petitioner knew or should have known of the penalties prior to committing the crime.

32

At the resentencing, in recommending a sentence to the trial judge, the State acknowledged that Petitioner had committed a first degree felony.  <u>See</u> Resentencing Tr. at 901.  There is no due process violation, and Petitioner is not entitled to habeas relief on ground two.  <u>See</u> Response at 20-22.

### C. Ground Three

As ground three, Petitioner claims that the trial court violated his Sixth Amendment right to a speedy trial.  Even assuming that the claim is exhausted and not procedurally barred, the claim is without merit.[17]  In <u>Barker v. Wingo</u>, 407 U.S. 514 (1972), the United States Supreme Court established a four-part balancing test for determining whether a defendant received a speedy trial within the meaning of the Sixth Amendment.  Under <u>Barker</u>, a court must consider:  (1) the length of the delay; (2) the reason for the delay; (3) whether, how, and when the defendant asserted his right to a speedy trial; and, (4) whether the defendant has suffered actual prejudice as a result of the delay.

---

[17] A speedy trial is guaranteed to the accused by the Sixth Amendment to the United States Constitution and is imposed by the Due Process Clause of the Fourteenth Amendment on the States. <u>Barker v. Wingo</u>, 407 U.S. 514, 515 (1972).  The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

Id. at 530; U.S. v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997), cert. denied, 523 U.S. 1077 (1998).  They are related factors that must be considered together; no single factor alone is sufficient to find a deprivation of the Sixth Amendment right.  Barker, 407 U.S. at 533; Schlei, 122 F.3d at 987 (citation omitted).  As a threshold inquiry, a petitioner must demonstrate that the length of the delay is presumptively prejudicial.  Barker, 407 U.S. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  Id.

     First, the record reflects that Petitioner was arrested on October 3, 1995, see Resp. Ex. B at 1-4, that the State of Florida charged him with impersonating a law enforcement officer during the commission of a felony on October 20, 1995, id. at 6, and that the parties were engaged in discovery through March 1996, Resp. Ex. B, Index.  Although represented by counsel (Assistant Public Defender Ted W. Hellmuth), Moline filed a pro se motion for discharge on January 9, 1996, id. at 31-32, which the trial court denied, id. at 33.  At a January 18, 1996 pretrial hearing, defense counsel requested that the case remain on the trial calendar for March 11th because he needed time to prepare.  Resp. Ex. D at 36-38.  When the trial judge asked if Petitioner wanted an earlier trial, Petitioner declined to request an earlier trial.  Id. at 38. At a pretrial hearing on March 7th, when defense counsel expressed that he needed

additional time to depose witnesses, id. at 3-4, Petitioner affirmed that he wanted to proceed to trial on March 11th, id. at 5.   At the March 8th pretrial hearing, the trial court denied Petitioner's renewed pro se motion for discharge since he was represented by counsel, id. at 12-13; and defense counsel agreed that he was prepared to proceed to trial on March 11th.  Id. at 18.

Florida Rule of Criminal Procedure 3.191(a) provides that every person charged with a crime shall be brought to trial "within 175 days of arrest if the crime charged is a felony."  Moline was arrested on the Clay County charges on October 3, 1995, see Resp. Ex. B at 2,[18] and his trial before a jury took place 160 days later on March 11, 1996.  Given the record,[19] Petitioner has neither shown unreasonable delay nor actual prejudice.  Therefore, Petitioner is not entitled to habeas relief on ground three.

---

[18] Petitioner argues that the arrest warrant for these charges was served on him on June 19, 1995, in Hillsborough County.  See Amended Reply at 9; Petitioner's Exhibit K.  However, given the record, it appears that Moline was arrested on Hillsborough County charges and later arrested on Clay County charges on October 3, 1995.  See Resp. Ex. B at 2.  At a January 18, 1996 pretrial hearing, the prosecutor explained that, when Moline appeared in Hillsborough County on separate charges, "there were holds placed on him for Clay County" and "[w]hen he appeared in Pinellas County, the holds were still on him in Pinellas County," but Moline "was not served a warrant until he was transported to Clay County" on September 22nd.  Resp. Ex. D at 36.

[19] In Barker, the Court stated: "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."  Barker, 407 U.S. at 530-31 (footnote omitted).

## VII. Conclusion

Upon consideration of the foregoing, the undersigned finds that Petitioner's claims fail. Accordingly, for these reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong.  <u>See</u> <u>Slack</u>, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of September, 2012.


MARCIA MORALES HOWARD
United States District Judge


sc 9/25
c:
Roger Carl Moline
Ass't Attorney General (Hill)